UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY Eastern District of Kentucky
LONDON                                    F I L E D

JUN 2 3 2005

CIVIL ACTION NO. 04-416-GWU                    AT LONDON
                                        LESLIE G. WHITMER
                                        CLERK U.S. DISTRICT COURT

JIMMY JONES,                                          PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,              DEFENDANT.

### INTRODUCTION

The plaintiff had originally brought Jones v. Barnhart, London Civil Action No.

02-22 (E.D. Ky.) to challenge a decision of the Commissioner of Social Security

denying his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). After a period of reconsideration prompted by the Court's

remand of January 29, 2003 (Tr. 484-93), the appeal has been redocketed under

the present civil action number and is once again before the Court on cross-motions

for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled. If no, proceed to Step 2.
      See 20 CFR 404.1520(b), 416.920(b).

1

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the

Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

3

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

4

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the

5

ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR

6

Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The cause for the Court's concern in remanding the case had been that the plaintiff, despite his seven grades of formal schooling, was formally tested as having only a fifth grade reading ability, a second grade spelling ability, and a third grade arithmetic ability. (Tr. 490-491). This had not been specified in the hypothetical originally relied upon by the ALJ, which referred to a "limited" education. (Tr. 491).

On remand, the Administrative Law Judge (ALJ) consolidated the case with a DIB application filed by the plaintiff on March 27, 2002 (Tr. 523-6), considered new evidence, and obtained additional testimony from a vocational expert (VE). The plaintiff was then found to have "severe" impairments including degenerative disc disease and hypertrophic changes of the spine, degenerative joint disease and

7

osteoarthritis of the knees, and mild chronic obstructive pulmonary disease, as well as borderline intellectual functioning and a history of substance abuse. (Tr. 464).

The ALJ then determined that there were two periods involved in the case, since the plaintiff testified at the September 11, 2003 hearing that he had been using marijuana daily until one year ago. (Tr. 631-2). The ALJ determined that, until September 1, 2002, Mr. Jones had not had the mental residual functional capacity to sustain employment, but substance abuse had been a material factor in the determination of disability. (Tr. 466). Therefore, under the requirements of Public Law 104-121, he had not been entitled to benefits. After September 1, 2002, Mr. Jones was held to have had the ability to perform "light" level exertion, with six hours of standing and walking and six hours of sitting in an eight-hour day, but with the following non-exertional impairments. (Tr. 466, 469). He: (1) required the option of sitting or standing every 30 minutes; (2) could not climb ladders, ropes, or scaffolds; (3) could occasionally crouch, stoop, crawl, kneel, balance, and use his lower extremities for operation of foot controls; (4) needed to avoid exposure to extreme cold, wetness, humidity, and vibration, and had a "limited but satisfactory" ability to follow work rules, relate to co-workers, understand, remember, and carry out simple instructions, and behave in an emotionally stable manner. (Id.). The ALJ pointed out that when asked a hypothetical question incorporating these factors, and specifying a person of the plaintiff's age, marginal education and/or illiteracy, and work experience, the VE had testified that there were jobs that such a person could

8

perform, including hand assembler, small parts inspector, hand packager, and sorter/checker. (Tr. 657-9, 662-3). The ALJ found the numbers of jobs "significant" and, therefore, found that Mr. Jones had not been disabled. (Tr. 468).[1]

While the educational factors selected by the ALJ reflected the uncontradicted findings in the evidence, the ALJ's determination that Mr. Jones had had the ability to stand and walk for six hours in an eight hour day was not supported by substantial evidence. Every examining source who expressed an opinion on the subject had indicated that he would be more limited, including Dr. Ray Hays (Tr. 182-5),[2] Dr. Christa U. Muckenhausen (Tr. 455), and Dr. Stephen Nutter, who had been the most generous in finding that the plaintiff could stand or walk four to five hours in an eight hour day, with rests. (Tr. 437). Dr. Patrice Beliveau, a one-time orthopedic examiner, had opined that the plaintiff's knee problem would mean he would always have an

---

[1]The total number of jobs was only 2,400 in Kentucky and 159,000 nationally. (Tr. 662). Counsel for the plaintiff raised the possibility at the hearing that this number of jobs would not be "significant," (Tr. 663-4), but has not raised the issue on appeal to this Court.

[2]As the Court noted in its prior decision, the plaintiff's reliance on a functional capacity assessment by Dr. Ray Hays, who practiced with Dr. David Hays, was misplaced in view of the fact that the plaintiff had only seen Dr. Ray Hays on one prior occasion, and no long-term treating relationship was established. (Tr. 492, n. 2). Subsequent office notes from the same clinic show that Mr. Jones was seen at intervals by a variety of different healthcare providers, including Dr. Ray Hays, and was not treated at all between January, 2001, and February, 2002. (Tr. 555). Dr. Hays noted that the plaintiff was "quite stiff" secondary to arthritis, but did not provide any other objective findings. He commented in April, 2002 that the plaintiff had chronic right knee pain, and "probably" needs a knee replacement. (Id.). Objectively, he found crepitus and decreased range of motion in the right knee, and stiffness of the low back. (Id.)

9

inability to squat, stoop, and crawl, although no specifics were given about standing. (Tr. 148).[3]

In connection with the plaintiff's new application, Dr. Bobby J. Kidd conducted a consultative evaluation in June, 2002, which included a right knee x-ray showing "moderately advanced" degenerative arthritis. (Tr. 562). However, Dr. Kidd's physical examination showed that the plaintiff had a normal gait, was stable at station, did not require an ambulatory aid, and was comfortable in the supine and sitting positions. (Tr. 559). There was slight crepitus in the right knee, but none in the left knee, and Mr. Jones could stand on one leg at a time without difficulty. (Tr. 560). The right leg was approximately 3-4 centimeters larger in circumference than the left, however. (Tr. 559). Dr. Kidd did not list any functional restrictions.

A state agency physician, Dr. James Ross, had subsequently reviewed the record, and had opined that Mr. Jones could perform medium level exertion, stand or walk about six hours a day, sit six hours a day and could occasionally climb, kneel, and crawl. (Tr. 571-80). While he reviewed the reports of Dr. Kidd, Dr. Nutter, Dr. Muckenhausen, and Dr. Hays, as well as other records, he did not give a clear rationale for finding an increased ability to stand.[4] A subsequent state agency

---

[3]The ALJ in the previous decision had accepted Dr. Beliveau's restrictions. (Tr. 19). The ALJ in the present decision found that the plaintiff could perform these activities "occasionally."

[4]He stated that Dr. Hays' opinion that the plaintiff could not perform even a reduced range of sedentary level exertion was "totally consistent with the other medical

Jones

reviewer, Dr. Gary Higgason, agreed with Dr. Ross, but provided no rationale, either. (Tr. 563-70).

While the opinion of a non-examining reviewing source may be accepted over that of an examiner, the non-examiner must have had access to the entire record, and clearly stated the reasons for his difference of opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Although Dr. Ross had access to most of the record, his report falls far short of providing a clear basis for his opinion. Clearly, the issue of the plaintiff's ability to stand is crucial in light of the very reduced numbers of light level jobs that the VE was able to identify even with a six hour walking/standing limitation.

The decision will be remanded for further consideration.

This the _____23_____ day of June, 2005.

G. WIX UNTHANK
SENIOR JUDGE

_____

evidence of record." (Tr. 579). Presumably "consistent" was a typographical error for "inconsistent."

11